## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| **BRITNI MURCH,** | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. _____ |
| **ACAPELLO SALONS, INC.** | ) |
| | ) |
| Defendant | ) |
| | ) |

### PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Britni Murch, by and through undersigned counsel, hereby complains against Defendant Acapello Salons, Inc., as follows:

### INTRODUCTION

1. On January 30, 2020, the World Health Organization designated the coronavirus disease 2019 ("COVID-19") outbreak as a Public Health Emergency of International Concern. On March 11, the WHO declared COVID-19 a global pandemic. *See* World Health Org., *WHO Director-General's Opening Remarks at the Media Briefing on COVID-19* (internet) (Mar. 11, 2020).

2. The coronavirus pandemic has since swept across the United States wreaking havoc on public health and the economy.

1

3. On March 15, 2020, Maine Governor Janet Mills declared a State of Civil Emergency and called for the closure of businesses, restaurants, schools, and limiting the number of individuals at gatherings.

4. In response to the Covid-19 pandemic, the Emergency Paid Sick Leave Act ("EPSLA") was enacted to provide employees up to 80 hours of paid sick leave. EPSLA expressly allows employees the ability to take paid sick leave if the employee needs to self-quarantine. EPSLA prohibits employers from discharging, disciplining, and/or discriminating against an employee who took or requested leave covered by EPSLA.

5. The State of Civil Emergency ended June 30, 2021: "After fifteen long, difficult months, ending the State of Civil Emergency is a welcome milestone that reflects the progress Maine has made in getting people vaccinated, reducing the spread of the virus, and getting back to normal. Maine people have persevered, and, although challenges remain, we will get through them together just as we did this past year. I congratulate and thank Maine people for all they have done to protect themselves, their loved ones, and their fellow citizens." Janet Mills, State of Maine Governor.

6. This is an action for violation of the Emergency Paid Sick Leave Act ("EPSLA") and for unpaid wages under the Fair Labor Standard Act ("FLSA") as provided for under EPSLA.

7. This case also challenges the Defendant's retaliation against Plaintiff resulting in constructive discharge in violation of the Maine Whistleblower Protection Act ("MWPA"), 26 M.R.S. § 831 *et seq.*

**THE PARTIES**

8. Plaintiff Britni Murch ("Plaintiff" or "Ms. Murch"), is an individual residing in the Town of Cornish, County of York, and State of Maine.

9. Defendant Acapello Salons, Inc., ("Acapello") is a Maine corporation duly authorized to do business in the State of Maine, operating as a hair and beauty salon chain with multiple locations in Southern Maine, headquartered in Scarborough, Maine, which is where Plaintiff worked.

## JURISDICTION AND VENUE

10. This Court's jurisdiction is proper pursuant to 28 U.S.C. § 1331 as the claims herein present a federal question.

11. Venue is proper in this district and division under 28 U.S.C. § 1391 because Defendant resides in this district and division and conducts business in this district and division.

12. Plaintiff filed a timely Charge of Discrimination against Defendant with the Maine Human Rights Commission ("MHRC"), alleging that Defendant subjected her to unlawful whistleblower retaliation.

13. On August 25, 2021, the MHRC issued a Notice of Right to Sue.

## BACKGROUND FACTS

14. Ms. Murch began working at Acapello Salons as a Stylist in August of 2016.

15. Acapello is a chain of hair salons with locations throughout Southern Maine in Saco, Scarborough, Portland, Falmouth, Yarmouth, and Freepor t.

16. June Juliano owns Acapello Salons and styles hair at the Scarborough location where Ms. Murch also worked.

17. Since the beginning of the pandemic, Ms. Juliano has repeatedly expressed that Covid-19 is a political stunt that will go away after the 2020 election and does not believe that Covid-19 is real.

18. Ms. Juliano refused to abide by CDC guidelines and refused to abide by regulations that were set in place at the beginning of the pandemic a means to slow the spread of Covid-19.

19. Ms. Juliano completely disregards safety precautions meant to protect clients and employees.

20. Ms. Juliano allowed clients to not wear a mask while having salon services when there was a mask mandate in effect.

21. On multiple occasions Ms. Murch complained to the Scarborough Manager, Tina Preble, that June was unreasonably risking exposure for clients and employees.

22. Ms. Preble agreed to speak with Ms. Juliano about Ms. Murch's concerns. However, June did not change her practices.

23. On the last day Ms. Murch worked with Ms. Juliano at Acapello, Ms. Juliano chose to reopen the reception/waiting area and allowed customers to wait in the salon on porous, non-hard surfaces that could not be sanitized between customers.

24. Ms. Murch told Ms. Juliano this was a safety issue she became upset with her and stated she was not going to have customers waiting in cars in a short and defensive manner.

25. Ms. Juliano required stylists to continue giving hand massages to customers.

26. Ms. Juliano also instructed stylists to perform lip waxing which requires customers to remove masks.

27. Ms. Juliano often brought the wax out to the styling stations and performed waxing services in the general area as opposed to in the waxing room where the act would be more contained. This caused the customer to remove their mask in the general area thus potentially exposing more people.

28. At the end of September 2020, Ms. Juliano went to Florida for vacation.

29. At the time, as part of Governor Mills' *Keep Maine Healthy*-2020 initiative and as required under *Executive Order 57 FY 19/20*, those traveling from outside of the state were required to either quarantine for 14 days or receive a negative test for Covid-19.

30. Upon returning to Maine Ms. Murch understood that Ms. Juliano did not intend to quarantine for the requisite 14 days nor intended to get a Covid-19 test before returning to work.

31. Ms. Juliano's husband, David Stanley, also works at Acapello. Mr. Stanley did not quarantine and worked out of all locations. The potential risk of exposure was great.

32. Ms. Murch believes Juliano and Stanley were trying to keep their travel to Florida a secret because they knew they were required to quarantine or test upon return, but did not intend to do either.

33. Ms. Juliano returned to the salon on October 5, 2020, one or two days after returning from Florida and had not taken a test for Covid-19 and did not quarantine.

34. On October 5, 2020, around 2:00 pm Ms. Murch spoke with Ms. Preble about her concerns regarding Ms. Juliano's return to work and refusal to take the required safety precautions.

35. Ms. Murch stated that she was uncomfortable with Ms. Juliano returning to work after traveling to Florida without quarantining for 14 days or without getting a negative test.

36. Ms. Murch understood Ms. Preble would speak with Ms. Juliano about her concerns regarding a safe return to the salon.

37. Ms. Murch followed up about the issue with Ms. Prebble that same afternoon via text message. In the text exchange Ms. Murch and Ms. Prebble wrote as follows:

38. Murch: "Hey Tina I had to leave but let me know how talking to June goes about her going to Florida and what [sic] not."

39. Prebble: "There has been no test and you said if not you was not coming in, so I just wanted to make sure that is what you said so I can call your guests."

40. Murch: "Yes, if June is going to be in and out of the salon with no test and no quarantine after going to Florida I feel like that is a disrespectful thing to do to her employees. I am not the only one who is upset. If she is quarantining from the salon tomorrow I would like to come work. If she does not then I guess I feel strongly enough about it that I won't come in. We are in a pandemic and some of us are trying our best to keep our families safe, I'm exposed enough. This isn't cool, also I know this isn't your fault."

41. Murch: "It's unfortunate I will lose pay because I don't feel really don't feel comfortable going to work next to her. If she wants to travel to and from Florida that's fine but she has health insurance. The respectful and best thing to do for us would to be getting tested to keep us all safe and as comfortable as we can be."

42. Murch: "I called you cus it's easier. Call me back when you get a chance please."

43. Prebble: "I will be taking you off the books for 14 days, we respect your decision."

44. Murch: "So I will be getting pay or do I need to call unemployment"

45. Murch: "That's a quite selfish decision June has made for myself and her salon. Just let me know if I will be receiving my [sic] pay or if I will need to contact the state for unemployment wages. Thank you Tina and again I know this does not reflect you and I'm sorry."

46. Prebble: "Just to confirm you will be out for 14 days?"

47. Murch: "Are those 14 days paid?"

48. Prebble: "14 days are not paid its excused personal time."

49. Murch: "It's not excused personal time because I didn't ask for it or want it. It's because my boss is risking my health. You can't force unpaid personal time."

50. Ms. Murch then followed up with a text conversation directly to Ms. Juliano. The text exchange went as follows:

51. Murch: "Just wanted to share some thoughts with you on this matter. I don't know for sure yet but something is strongly telling me that you guys can't take pay away from an employee because the owner doesn't want to follow pandemic protocol to ensure the safety of those around her. I will be in touch with whoever I need to first thing tomorrow morning to make sure this is all legal and a legit solution to our disagreement during this time."

52. Juliano: "Understood."

53. At the time Ms. Murch was just over three months pregnant and had a seven-month-old baby. Ms. Murch was concerned about her own safety as well as the safety of her young and unborn children.

54. Further, Ms. Murch's husband was recently disabled and out of work after falling from a twenty-foot-high beam on a construction site.

55. Ms. Juliano was aware of Ms. Murch's husband's disability, her new baby, and her pregnancy. Ms. Juliano also knew that two weeks without income is a financial impossibility for Ms. Murch's family.

56. Therefore, Ms. Murch was left with choosing between not working and thus earning no income or going to work and risking the safety of her family.

57. Ms. Murch believes she was told to take unpaid leave in retaliation for requesting that Ms. Juliano take a Covid-19 test or quarantine.

58. As of October 5, 2020, Ms. Juliano was on the second day of her possible incubation period after returning from travel out of state to Florida where there was no mask mandate and no other public health measures to prevent the spread of the virus. At times Florida had the highest rate of infection in the country.

59. Kasey Burreta was an employee who also complained to management several times about insufficient Covid-19 protocols and being over booked resulting in insufficient time for her to properly do a service and sanitize before getting her next client into the chair safely. Ms. Juliano continued to shorten her gaps between clients and overlap appointments in order to make more money. Ms. Burreta quit because Ms. Juliano's actions made her feel unsafe in the workplace.

60. In reference to this issue Ms. Burretta wrote "Meanwhile in [M]aine, my boss is booking us two clients per stylist at the same time, back to back all day with no break in between at all, not checking if clients are from out of state, and istrying to get us all sick as f--- just to make her money."

61. After leaving the salon Ms. Murch learned that while she was still working another employee notified Ms. Juliano that she had been directly exposed to a person that tested positive for Covid-19.

62. The employee also notified Ms. Juliano about her need to quarantine for 14-days. Ms. Juliano instructed the employee to continue working and not tell any of her coworkers.

63. At all times during her employment, Ms. Murch performed her job duties satisfactorily, obtaining satisfactory feedback, evaluations, and sales numbers.

64. Acapello's decision to force Ms. Murch to take an unpaid, two-week leave of absence in response to requesting her employer either quarantine or receive a negative Covid test amounted to retaliation under the Maine Whistleblower Protection Act.

65. Ms. Murch therefore filed a whistleblower retaliation charge with the Maine Human Rights Commission and has since received the right to sue.

66. Acapello constructively discharged Ms. Murch from employment on or about October 5, 2020.

67. Acapello's conduct amounted to a willful, knowing violation of Maine law.

68. Acapello constructively discharged Plaintiff from employment because she requested and/or took leave protected by and eligible for coverage under the Emergency Paid Sick Leave Act.

## COUNT I: Whistleblower Retaliation (26 M.R.S. § 831 *et seq.*)

69. Plaintiff incorporates the above paragraphs of her Complaint as if fully restated herein.

70. Murch engaged in protected activity within the meaning of the Maine Whistleblower Protection Act by opposing the unsafe and illegal practices related to covid protocol at Acapello.

71. Murch had a reasonable basis for believing that Defendant's conduct was illegal and violated state and federal regulations. Murch also had a reasonable basis for believing Defendant's conduct was unsafe and jeopardized the health and safety of herself, her coworkers and clients.

72. Murch engaged in the aforementioned protected activity in good faith.

73. Acapello took adverse action against Murch because of her protected whistleblower activity.

74. The aforementioned instance of protected conduct bears a causal relationship to the adverse employment action(s) alleged herein.

75. As a result of the Acapello's whistleblower retaliation, Murch has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, civil penal damages, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Britni Murch requests that the Court award her damages in the form of lost back pay, front pay, compensatory damages, civil penal damages, punitive or liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

### COUNT II: Wrongful Discharge in Violation of Section 15(a)(3) of the FLSA

76. Plaintiff incorporates the above paragraphs of her Complaint as if fully restated herein.

77. At all times relevant to this civil action, Plaintiff was a covered employee under the EPSLA. *See* 29 CFR § 826.30.

78. At all times relevant to this civil action, Defendant was a covered employer under the EPSLA, which applies to public agencies and state governmental bodies. *See* 29 CFR § 826.40.

79. Plaintiff qualified for and was entitled to paid sick leave under the EPSLA based on a "substantially similar condition." See 29 CFR § 826.20 (a)(1)(vi).

80. Plaintiff provided Acapello of notice of her need for paid sick leave under the EPSLA. See 29 CFR § 826.90.

81. Defendant Acapello violated the EPSLA by constructively discharging, disciplining, and discriminatorily retaliating against Plaintiff because she took and/or requested paid sick leave under the EPSLA. See 29 CFR § 826.151(a).

82. Acapello's constructive discharge, discipline, and/or discriminatory retaliation against Plaintiff because she took and/or requested paid sick leave under the Emergency Paid Sick Leave Act violates Section 15(a)(3) of the FLSA, 29 U.S.C. 215(a)(3), and allows Plaintiff to bring a claim under Sections 16 and 17 of the FLSA, 29 U.S.C. 216, 217.

83. As a result of Acapello's violation of Section 215(a)(3) of the FLS and violation of the Emergency Paid Sick Leave Act, Plaintiff is entitled to the amount of her unpaid wages, or her unpaid overtime compensation, as the case may be, and an additional equal amount as liquidated damages.

84. Plaintiff is further entitled legal or equitable relief, including without limitation employment, reinstatement, promotion, and removal of the termination notation in her employee records.

85. In addition to any judgment awarded to Plaintiff, a reasonable attorney's fee should to be paid by Acapello and costs of the action. 29 U.S.C.A. § 216(b).

86. To the extent allowed by law, Plaintiff additionally requests compensatory damages for emotional distress from being constructively discharged during a worldwide pandemic right before the holidays, the costs of finding a new job, and punitive damages.

WHEREFORE, Plaintiff Britni Murch requests that the Court award her damages in the form of lost back pay, front pay, compensatory damages, civil penal damages, punitive or liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## COUNT III: Failure to Pay Wages

87. Plaintiff incorporates the above paragraphs of her Complaint as if fully restated herein.

88. At all times relevant to this civil action, Plaintiff was a covered employee under the EPSLA. *See* 29 CFR § 826.30.

89. At all times relevant to this civil action, Defendant was a covered employer under the EPSLA, which applies to private sector employers with less than 500 employees. *See* 29 CFR § 826.40.

90. Plaintiff qualified for and was entitled to paid sick leave under the EPSLA because her employer, subject to quarantine requirements, refused to self-quarantine thus imposing upon her employees to quarantine themselves.

91. Defendant granted Plaintiff's quarantine, but refused to pay her wages which gives rise to a claim under sections 16 and 17 of the FLSA, 29 U.S.C. 216, 217. *See* 29 CFR § 826.151(b)(1).

92. Plaintiff is entitled to the amount of her unpaid wages, or her unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Plaintiff is further entitled legal or equitable relief, including without limitation employment, reinstatement, promotion. In addition to any judgment awarded to the plaintiff, a reasonable attorney's fee should to be paid by the defendant, and costs of the action. 29 U.S.C.A. § 216(b).

WHEREFORE, Plaintiff Britni Murch requests that the Court award her damages in the form of lost back pay, front pay, compensatory damages, civil penal damages, punitive or liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## JURY TRIAL DEMAND

Plaintiff Britni Murch hereby demands a jury trial on all matters so triable under the laws and Constitution of the United States and the State of Maine.

Dated at Kennebunk, Maine this 22nd day of November, 2021.

<div style="margin-left: 40%;">

*s/ Laura White*
Laura H. White, Bar No. 4025
*Attorney for Plaintiff*
White & Quinlan, LLC
62 Portland Rd., Suite 21
Kennebunk, ME 04043
(207) 502-7484
[lwhite@whiteandquinlan.com](mailto:lwhite@whiteandquinlan.com)


*s/ Danielle Quinlan*
Danielle M. Quinlan, Bar No. 5480
*Attorney for Plaintiff*
White & Quinlan, LLC
62 Portland Rd., Suite 21
Kennebunk, ME 04043
(207) 502-7484
[dquinlan@whiteandquinlan.com](mailto:dquinlan@whiteandquinlan.com)

</div>